| | |
|---|---|
| STATE OF LOUISIANA | CRIMINAL DISTRICT COURT |
| VS | PARISH OF ORLEANS |
| LARRY MOSES | CASE NO. 371-524 "D" |

## POST-CONVICTION HEARING RULING

The above-captioned matter comes before this Court on a Second or Subsequent Application for Post-Conviction Relief filed by applicant Larry Moses on March 3, 2023. Mr. Moses was convicted of the 1994 first degree murders of Alma Causey and Daniel Ratliff in a jury trial that culminated on November 1 1995.

In his application, Mr. Moses alleges five grounds for relief:

I. The State of Louisiana withheld material, favorable evidence, violating the defendant's right to due process in violation of its *Brady* obligations,

II. The State of Louisiana elicited false testimony at trial, in violation of *Napue v Illinois*,

III. Counsel for Mr. Moses was ineffective,

IV. Mr. Moses is factually innocent,

and

V. The prejudice suffered by Mr. Moses dues to collective impact of his counsel's ineffectiveness and the State's failure to disclose favorable evidence entitles him to a new trial.

On April 12, 2023, the State filed its Answer to the petitioner's application for post-conviction relief and, after a brief hearing, this matter was subsequently set for evidentiary hearing, which took place on May 12, 2023, and was held in open court. No testimony was introduced, but a filing of several exhibits (petitioner's Exhibits 1-30) and stipulations (petitioner's Exhibit 31) were accepted into the record, and the Court heard argument from both the applicant and the State of Louisiana. After the hearings concluded, the court ordered the petitioner-applicant and the State-respondent to submit memoranda of law. After review of the available record, the trial transcript, the various Exhibits, the stipulations, and arguments by counsel at hearing, the Court's ruling on the merits is as follows:

Page 1 of 11

Clerk's Office 1/22 20 24
by ҸB Deputy Clerk
Hon. Darren P. Lombard
Clerk of Criminal District Court, Orleans Parish

Exhibit 1

This Court finds that Claim I is merited, and Claim V is merited in part, and grants the application for post-conviction relief on those grounds under La. C.Cr.P. Art 930.3(1). This Court finds that the defendant-Petitioner did not meet his burden as to Claims II, III, and IV.

I. **The Petitioner's *Brady* claim:**

This Court finds that the State violated its statutory and ethical obligations by withholding crucial information that was favorable to the defendant, and grants relief pursuant to *Brady*. "Criminal defendants who are convicted as a consequence of prosecutorial misconduct will be afforded post-conviction relief where appropriate." *Knapper v. Connick*, 681 So 2d 944 (La. 1996).

The petitioner avers, and the State of Louisiana seems to agree, that the prosecution withheld information that would be favorable to the defendant from his counsel. In fact, the State summarizes the trial and resultant Post-Conviction Claims thusly in its reply brief:

> "The jury that convicted Mr. Moses did not hear significant relevant evidence that bears upon whether Mr. Moses committed the murder. Thus, his trial did not serve "the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth." *Alderman v. United States*, 394 U.S. 165, 175 (1969). The State agrees that the absence of this evidence from Mr. Moses' trial undermines confidence in the verdict of guilt that was entered against him. However, the State cannot concede that Mr. Moses met his burden to prove his claims of constitutional violations as set out in Brady v. Maryland, 373 U.S. 83 (1963); Napue v. Illinois, 360 U.S. 264 (1959), see also Alcorta v. State of Tex., 355 U.S. 28 (1957); Strickland v. Washington, 466 U.S. 668 (1984); or the high statutory standard to prove factual innocence under La. C. Cr. P. art. 926.2."[1]

---

[1] State's Answer p.3

Clerk's Office 1/22/20 24
by ___ KB ___ Deputy Clerk
Hon. Darren P. Lombard
Clerk of Criminal District Court, Orleans Parish

The facts adduced at hearing and stipulated to in the various exhibits bear out that the prosecution knew that their only eyewitness, Mr. Frederick Stamps, suffered from an apparent mental illness and, additionally, had a possible reason to blame the defendant for this murder. At the time of the trial, the prosecution had in its possession Mr. Stamps' medical records[2] and handwritten notes about his medications[3], which demonstrated his mental illness and that he was prescribed schizophrenia medication. At the very least, information about Mr. Stamps' mental health could have been used for impeachment purposes during trial.

Additionally, the prosecution knew about the multiple inconsistencies in Mr. Stamps' statements. There were notes in the file concerning Mr. Stamps' changing story regarding Gail Jenkins' involvement in the May 25, 1994 alleged robbery and beating and his relationship to Ms. Jenkins[4]. These notes denote the prosecution's concerns due to Stamps' inconsistency at various interviews regarding the alleged robbery and/or beating. There were also handwritten notes in the prosecution's file concerning the nature of Mr. Stamps' relationship with Gail Jenkins and his desire to rekindle their romance[5], which, as the Petitioner avers in his Application, offer a possible motive for Mr. Stamps to identify Mr. Moses and thus remove him as an obstacle to the relationship with Ms. Jenkins. Due to Mr. Stamps' inconsistencies, mental illness, and potential grudge against the defendant as a romantic rival, Stamps' credibility certainly would have been an issue ripe for cross-examination by the defendant, had the defendant been provided this relevant information.

None of this clearly favorable information was ever turned over to the defense during either pre-trial discovery, the furnishing of Bill of Particulars responses, nor found in the court record or anywhere in Mr. Moses' possession prior to the trial. Both the petitioner and the State agree that many of the notes, the medical records, and the prosecutor's pretrial preparatory papers were first tendered to Mr. Moses approximately 1 year ago, more than 26 years after his trial[6]. This failure to disclose kneecapped the defendant's ability to develop this favorable evidence, and put the State of Louisiana at an impermissibly unfair advantage over the defendant. Mr. Moses was deprived of the

---

[2] See Petitioner's Exhibit 17
[3] See Petitioner's Exhibit 5
[4] See Petitioner's Exhibits 3, 8, 16, 19
[5] See Petitioner's Exhibit 16
[6] See Petitioner's Exhibit 31, the joint stipulations

Clerk's Office 11/22/20 2ep
by _____ Deputy Clerk
Hon. Darren P. Lombard
Clerk of Criminal District Court, Orleans Parish
A True Copy

ability to explore credibility, reliability, and other impeachment due to the concealment of material information by the state of Louisiana in direct violation of *Brady* and its progeny.

Concealment or suppression by the State of evidence favorable to the accused is a violation of due process where the evidence is material either to guilt or punishment, regardless of whether there was intent to conceal on the part of the prosecution. *Brady v. Maryland* 373 U.S. at 87. Courts have also long held that *Brady* encompasses impeachment evidence in addition to directly exculpatory evidence. *See generally, United States v. Bagley,* 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

It is also important to note that the standard of review is not whether it is more likely than not that the verdict would be different if the evidence had been admitted at trial, but whether, in its absence defendant received a fair trial resulting in a verdict worthy of confidence. *Kyles v Whitley* 514 U.S. 419, at 434 (1995).

To constitute a *Brady* violation, the defendant must show that the evidence withheld by the State is "favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the state, either willfully or inadvertently; and prejudice must have ensued. " See *State v Cambrice*, 202 So. 2d 482, 485-86 (internal quotations omitted) (La. 1999). "*Brady* held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."" *Kyles* v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quoting *Brady*, 373 U.S., at 87, 83 S.Ct., at 1196-1197) (citations omitted).

A prosecutor breaches his constitutional duty to disclose impeachment evidence when "the omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." *U.S. v. Agurs*, 427 U.S. 97, 112 (1976). Here, it is evident that the information about Mr Stamps' mental illness and inconsistent accounts of events related to the homicides, as well as Mr. Stamps' alleged victimhood in a separate incident, which may or may not have provided motive to "frame" Mr. Moses, are at minimum, favorable because they could have been used by defendant for impeachment purposes. The State of

Louisiana, without admitting to violations of *Brady* and its progeny, argues that, at least as it relates to information regarding Mr. Stamps' mental condition and hospitalization, was not discoverable material. This Court disagrees with the State's analysis.

At hearing on this issue, in which exhibits were introduced and stipulations proffered, the Court also examined the State of Louisiana on record, specifically as it relates to Petitioner's exhibit 17. The State of Louisiana, at the evidentiary hearing, repeatedly averred that the medical records of Frederick Stamps were not disclosed to the defense in discovery because they were evidence in another case (the alleged robbery purportedly committed by Mr. Moses and Ms. Jenkins against Frederick Stamps, the named victim therein, and charged in case no. 371-647, and later *nolle prossed*). This is in direct opposition to the plain reading of the information within the four corners of the document, contained on **page one** of Exhibit 17. Exhibit 17 was clearly obtained in connection with the instant matter, 371-524, and that is evinced by the La. Health Care Authority's cover letter referencing the subpoenaed case number being 371-524. This exhibit was introduced and its authenticity stipulated to by the State as an authentic exhibit that also bears the "digital stamp" which reads "CERTIFIED DA OFFICE COPY."

Thus, it is obvious to this Court that these medical records were obtained by the State in connection with **this case**, not the alleged robbery, and that the State was in possession of them prior to trial. The date the cover letter of compliance subpoena bears is February 9, 1995, more than six months before the trial, which occurred October 30, 31 and November 1 of 1995. The State's assertion that this was obtained because Mr. Stamps was a victim in the alleged robbery under case no. 371-647, is, at best a misstatement that was repeatedly urged by the State of Louisiana at the evidentiary hearing, and at worst a false statement, as the return on the *subpoena duces tecum* speaks for itself. It is clear that the information contained in Exhibit 17 was relevant to the sole alleged eyewitness, Frederick Stamps,' credibility and ability to perceive, and it is clear it was never turned over until May of 2022, more than 26 years after Mr. Moses' conviction in this case.

The *Kyles* Court held that the issue of materiality lies "not whether the defendant would more likely than not have received a different verdict with the evidence, but

Clerk's Office 11/22/20 24
by KB Deputy Clerk
Hon. Darren P. Lombard
Clerk of Criminal District Court, Orleans Parish

whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." 514 U.S. at 434. Thus, this Court need not inquire as to whether the outcome at trial would have been different. The inquiry instead, as it relates to materiality, is whether the verdict at trial is worthy of confidence given the failure to disclose. This Court finds that the verdict is not dependable and worthy of confidence where the accused had no opportunity to review and utilize information that the State obviously had in its possession as to the credibility of its "star witness" at trial, and therefore the omission is material and significant.

It is also evident that this information was deliberately concealed by the state. The State of Louisiana, even on direct appeal, moved to strike the same medical records contained in exhibit 17 of the petitioner's application, ostensibly for lack of authenticity, despite the fact that the State knew of these records and had a copy of these records well before petitioner's 1997 appeal of his conviction. The State in fact called into doubt the authenticity of the medical documentation, failing to disclose that it had these same documents in its own possession and knew of their provenance pursuant to its own subpoena return from the Louisiana Health Care Authority.

This deliberate failure to disclose cannot be viewed lightly or be mistaken for a benign oversight. As made clear by *Kyles v. Whitley*, the prosecutor "has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case," and cannot claim ignorance as to the lack of knowledge when he or she deliberately decides not to inquire further about the existence of favorable information. Courts have further held that a prosecutor cannot successfully claim ignorance if the exculpatory or impeachment evidence not disclosed to defendant is actually contained in the prosecutor's own files, the files of police agencies involved in the investigation, and the files of other investigative agencies that are part of the "prosecution team," such as other members of law enforcement. Here, however, it is clear that the information <u>was</u> in fact in the possession of the prosecutor prior to trial, and there is no issue as to the prosecution failing to learn of favorable evidence, only its failure to then turn it over to the defense as demanded in discovery and as further mandated by *Brady* and its progeny.

Even if the assistant district attorney lacked actual knowledge of whether Mr. Stamps' relationship with Ms. Jenkins was more serious and long-established than his

Clerk's Office 11/22/20 24
by VB  Deputy Clerk
Hon. Darren P. Lombard
Clerk of Criminal District Court, Orleans Parish
A True Copy

contention on the witness stand in trial that she was merely a "trick date," the State certainly knew that Mr. Stamps had given various descriptions and explanations to describe his relationship with Ms. Jenkins, all of which would have been relevant impeachment material under *Giglio*. As to Mr. Stamps' mental illness, the State certainly knew of its existence, considered it *Brady* material in the State's own trial preparation notes[7], and never turned it over to the defense, despite apparently knowing it was relevant to, at the very least, Mr. Stamps' credibility.

This Court also finds the state failed to fulfill statutory requirements pursuant to Art. 729.3, which states in relevant part: "if, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection," in its failure to disclose information on an ongoing basis to the defendant.

Here, the defense filed a Motion for Bill of Particulars and demanded discovery. The minutes reflected in the record denote that the State responded to the Bill of Particulars on November 10, 1994.[8] In his demand for a Bill of Particulars, the defendant specifically requested favorable evidence under numbers 18, 39, 40. The State's response to this inquiry was, respectively, "No," "No," and "Not applicable." While the minutes indicate that the State furnished its answer to the Bill of Particulars prior to the returned *subpoena duces tecum*, the State had an ongoing obligation to turn over evidence that would have changed its response to the Bill of Particulars and/or to comply with defendant's discovery demand, and, again **without a doubt** was obligated to furnish this information under its constitutional obligations of *Brady* and its progeny, notwithstanding any court order to furnish discovery or a Bill of Particulars.

As such, this Court finds that the Petitioner has met his burden and is entitled to relief under claim I, the *Brady* claim.

---

[7] See Petitioner's Exhibit 5
[8] Minutes of Court, November 10, 1994 reflect that "THE STATE FILED ANSWERS TO DEFENSE MOTIONS."

Clerk's Office 11/22/20 24
by VB Deputy Clerk
Hon. Darren P. Lombard
Clerk of Criminal District Court, Orleans Parish

## II. *Napue* Claim

Considering the notes regarding his relationship with Ms. Jenkins found within the State's files, defendant contends that the State knew that Mr. Stamps falsely testified at trial. The ADA at trial failed to correct Mr. Stamps or any other witness who testified, despite clearly being aware of a conflicting characterization of Stamps' relationship with Ms. Jenkins. Specifically, Mr. Stamps' statements about Ms. Jenkins, the gun, and his fight with Mr. Moses, are all inconsistent with the prior statements he had made to the State as evidenced by pretrial meeting notes, and Petitioner contends that the totality of this testimony created a false impression for the jury that went uncorrected by the State during Stamps' testimony.

The State was obviously aware that Mr. Stamps was suffering from a mental illness, and that he'd given multiple accounts and descriptions of his relationship with Gail Jenkins. The fact that these concerns were known to the State is certainly troubling; however, the very fact that Mr. Stamps is so unreliable gives this Court pause as to whether, as in *Napue*, the State knowingly promulgated false testimony. This Court finds that the inconsistencies borne out by the testimony of Mr. Stamps rise to the level of credibility and reliability, as discussed, *Supra*, not to outright false statements of fact. It is precisely due to Mr. Stamps' unreliability that it cannot definitively be said that State actors prosecuting this case knew, for certain, the true nature of the relationship between Stamps and Jenkins, or the facts and circumstances surrounding the alleged robbery and/or battery that was ultimately dismissed. As such, this Court finds that the petitioner did not meet its burden as to the *Napue* claim.

## III. Ineffective Assistance of Counsel Claim

*Strickland* "requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Petitioner contends that Mr. Moses' counsel failed to investigate his alibi witnesses. Mr. Moses named ten different witnesses that could have potentially placed him out of town at the time of the crime. They knew all of the names and addresses to

Page 8 of 11

Clerk's Office 1/22/20 2024
by _____ Deputy Clerk
Hon. Darren P. Lombard
Clerk of Criminal District Court, Orleans Parish

these potential witnesses but did not fully investigate them or even interview more than half of them. Specifically, one witness drove him out of town, knew he did not return until after and was the individual who called Mr. Moses on a landline located out of the city to inform him of the murders. According to the petitioner, this would have given the jury new facts that would have been favorable to the defense, and if these witnesses were fully investigated, the jury could have heard pertinent information about Mr. Moses location during the crime.

*Strickland* holds that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Here, notice of alibi was given, and bears out the inference that defendant's trial counsel did in fact conduct inquiry and investigation into the various individuals who could have been called on the defendant's behalf. This Court therefore must infer that, for strategic reasons, those witnesses were ultimately not called at trial.

In reviewing this matter, the Court notes that one individual, David Ducros, who is the person who would have attested to driving Mr. Moses out of town and communicating with him via landline phone, was already at least a twice-convicted felon at the time this matter went to trial[9]. It is certainly within the realm of a discretionary strategic choice not to call such an individual who would have been subject to rigorous cross-examination as an alibi witness.

The petitioner also notes in his original application that other individuals listed as potential alibi witnesses were family members of the defendant, and would have also been subject to scrutiny as it relates to any motive to assist the defendant, in questions as to their credibility. Again, as strategic choices by counsel must be given great deference, this Court finds that trial counsel would have been justified in choosing not to call the listed alibi witnesses noted in the Defendant's notice of alibi, which was timely provided to the State. Thus, the petitioner did not meet his burden as to this issue.

---

[9] See, 335-964"A", wherein Mr. Ducros was charged and convicted of being a felon in possession of a firearm. This case occurred prior in time to the instant case. Because, logically, an underlying felony conviction must have also been present on Mr. Ducros' record, this Court infers that he had at least two felony convictions at the time he would have been called to testify at trial.

Clerk's Office 11/22 2024

by _____ Deputy Clerk

Hon. Darren P. Lombard
Clerk of Criminal District Court, Orleans Parish

IV. **Factual Innocence Claim**

This Court finds that the defendant has not met his burden as to this claim under La. C.Cr.P. 962.2. Mr. Moses has done much to establish the *Brady* violation, but here has not proffered evidence of actual innocence sufficient to entitle him to relief on those grounds. La. C.Cr.P. 962.2 B.(1)(a) reads, in relevant part, that "[t]o assert a claim of factual innocence under this Article, a petitioner shall present new, reliable, and noncumulative evidence that would be legally admissible at trial and that was not known or discoverable at or prior to trial and that is either:

(i) Scientific, forensic, physical, or nontestimonial documentary evidence.

(ii) Testimonial evidence that is corroborated by evidence of the type described in Item (i) of this Subsubparagraph."

Here, the evidence certainly shows that the information in the possession of the State of Louisiana and not tendered to the defendant until May 2022 was *Brady* material and resulted in a trial lacking "a verdict worthy of confidence" as required in *Kyles*. Although the defendant has submitted affidavits as to the alibi witnesses who did not testify at trial, discussed *supra*, the petitioner herein has not propounded any "[s]cientific, forensic, physical, or nontestimonial documentary evidence" that is satisfactory to thie Court's inquiry to corroborate the testimonial affidavits submitted as exhibits in his application.

As such, this Court does not find that the Petitioner has "prove[n] by clear and convincing evidence that, had the new evidence been presented at trial, no rational juror would have found the petitioner guilty beyond a reasonable doubt of either the offense of conviction or of any felony offense that was a responsive verdict to the offense of conviction at the time of the conviction." The petitioner has thusly not met the burden articulated in the Code as to factual innocence, and this Court finds that this claim lacks merit.

V. **The "collective impact" claim:**

The Petitioner lastly claims that the prejudice he suffered due to collective impact of his counsel's ineffectiveness and the State's failure to disclose favorable evidence entitles him to a new trial. This Court agrees, in part, and disagrees in part, with this claim.

Page 10 of 11

Clerk's Office 11/22 2024
by ____ Deputy Clerk
Hon. Darren P. Lombard
Clerk of Criminal District Court, Orleans Parish

The State of Louisiana, in failing to admit to its outright violation of *Brady* and its progeny, concedes however "that the absence of this evidence from Mr. Moses' trial undermines confidence in the verdict of guilt that was entered against him.[10]" The State goes on to "concede[] that Mr. Moses' conviction was a miscarriage of justice because he was convicted by a jury that was deprived of all the relevant evidence but does not agree that any one of his legal claims standing alone warrants relief. If the Court agrees, it can grant relief without further proceedings when the 'factual and legal issues c[ould] be resolved based upon the application and answer, and supporting documents, including relevant transcripts, depositions and other reliable documents submitted by either party or available to the court.' La.C.Cr.P. art. 929(A); State ex rel. Tassin v. Whitley, 602 So.2d 721, 722 (La.1992)."[11]

Indeed, the State takes the peculiar stance that it indeed did fail to disclose "relevant evidence" but curiously avoids accepting responsibility for that failure under *Brady*. This Court, however, as discussed, *supra*, finds that the failure to disclose indeed does arise to the level of a *Brady* violation. This Court disagrees, as also discussed, *supra*, that counsel's deficient performance rose to the level of a denial of his Sixth Amendment right to counsel. This Court agrees with the State that the outcome of the trial in Mr. Moses' case is a verdict unworthy of confidence, but holds that this is due to the failures of the State and its deliberate concealment of relevant facts that were obviously material and should have been disclosed to the defendant prior to trial.

For these reasons, the Court **grants** the Application for Post-Conviction Relief under Claim I and, in part, Claim V, dismissing Claims II, III, and IV, and **vacates** the verdict of trial accordingly.

New Orleans, Louisiana, this 25th of May, 2023.

/s/ Hon. Kimya M. Holmes

---

[10] See State's Answer, p.3
[11] Id.

Clerk's Office 11/22 20__
by ___ Deputy Clerk
Hon. Darren P. Lombard
Clerk of Criminal District Court, Orleans Parish